**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNIQUE PAVING** | ) | **CASE NO. 1:07 CV 2501** |
| **MATERIALS CORP.,** *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **ANTHONY J. FARGNOLI,** *et al.*, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

This matter is before the Court upon plaintiffs' motion for a preliminary injunction. This case arises out of defendant Anthony Fargnoli's employment with defendant Lafarge North America, Inc. For the reasons that follow, the motion is DENIED.

**FACTS**

Plaintiffs Unique Paving Materials Corp. and Unique Paving Materials of California, Inc. (collectively, "plaintiffs" or "Unique") bring this action against defendants Anthony J. Fargnoli ("Fargnoli"), Lafarge North America, Inc. ("Lafarge"), QPR Division of Lafarge North America ("QPR"), Lloyd Folsom ("Folsom"), and Don Nathan ("Nathan") (collectively, "defendants").[1]

---

[1] QPR is not a separate legal entity. It is a division of Lafarge.

Plaintiffs and the QPR division of Lafarge are in the business of manufacturing and distributing pavement repair material used to repair potholes and surface irregularities in roads and other driving surfaces. Lafarge admits that its QPR division directly competes with plaintiffs.

Plaintiffs allege they have developed proprietary chemical processes and formulations that are maintained and guarded as trade secrets (the "technical trade secrets"). Employees are required to enter into a non-disclosure agreement and a non-compete agreement to protect these trade secrets. Plaintiffs also allege that they have developed proprietary business data and information about customers, marketing, pricing, and sales methodology (the "business trade secrets"). These business trade secrets are also protected from disclosure and competitive use by restrictive covenants and employment agreements entered into by their employees.

Prior to May 2001, Fargnoli had been employed by defendant QPR's predecessor-in-interest ("Old QPR") in a sales capacity. On or about May 16, 2001, Fargnoli entered into employment in a sales capacity with plaintiffs or their predecessors-in-interest. Incident to his employment with plaintiffs, Fargnoli entered into a "Confidentiality, Patent and Non-Competition Agreement" (the "Agreement"). The Agreement provides in relevant part:

> In consideration of my employment ... I hereby agree, covenant and contract with [Unique] as follows:
>
> ∗∗∗
>
> 4. <u>Confidentiality.</u>  I will not, either during my Employment or thereafter, except as authorized or directed by [Unique] in writing, disclose to others, use for my own benefit, copy, or makes notes of, any confidential knowledge, proprietary methods or information, or trade secrets or any other knowledge or information (other than that which is public knowledge) of or relating to the business, activities, formulations or facilities of [Unique] which may come to my

knowledge during my Employment.

*\*\*\**

6. <u>Non-Competition.</u>  Upon termination of my Employment for whatever reason and irrespective of whether said termination constitutes wrongful discharge or is voluntary on my part or not, I covenant and agree that for a period of three (3) years following said termination, I shall not, directly or indirectly, enter into direct competition with [Unique] in the business of developing, producing, distributing and/or selling asphalt patching materials in the State of Ohio and the State of New York, which is my assigned territory as an Employee of [Unique].  I agree not to enter into direct or indirect competition as described herein, either as a principal, shareholder, partner, joint venturer, investor, option holder, lender, financier, consultant, advisor, director, officer, salesperson, employee or agent for or with respect to individual or business enterprise in any form whatsoever.  This covenant of mine shall be construed as an agreement independent of any other provision of this Agreement; and the existence of any claim or cause of action of mine against [Unique] shall not constitute a defense to [Unique's] enforcement of this covenant.  I specifically agree that these non-competition restrictions are no greater than those required for [Unique's] protection; that they do not impose undue hardship on me; and are not injurious to the public.  Furthermore, I and [Unique] agree and declare that it is impossible to measure in money the damages which may accrue to [Unique] by reason of my competing with [Unique] in violation of the foregoing.  Therefore, in the event that [Unique] shall institute any action or proceeding to enforce the non-competition provisions of this Agreement, I, as a party against whom such action or proceeding is brought ("possible defendant") shall and hereby do, in advance, waive the claim or defense that there is an adequate remedy at law, and no possible defendant shall urge, or be heard to urge, in any action or proceeding the claim or defense that such remedy at law exists.

7. <u>Commissions.</u>  In the event I shall compete with [Unique] in Ohio or in my assigned territory at any time during the three (3) year period commending on the date of termination of my Employment, and such competition does not result in a valid, enforceable permanent injunction relating thereto based upon provisions of Section 6 of this Agreement, I agree that I shall pay [Unique] a commission for each sale of any product in competition with [Unique] made during such three (3) year period as follows:  (i) such

>> commission shall be forty percent (40%) of the gross sales price for each sale made to any person or entity who or which was a customer or producer of [Unique] at any time during the term of my Employment; and (ii) the rate of such commission shall be twenty-five percent (25%) of the gross sales price for each sale made to any person or entity who or which was not a customer of [Unique] during the term of my Employment. The commission obligation shall apply during the entire three (3) year period, whether or not an injunctive relief shall have been brought.

On or about February 14, 2007, Fargnoli resigned his position at Unique. On or about February 19, 2007, Fargnoli began working for Lafarge as a quality control manager for the QPR division.

The Complaint asserts four causes of action. Count One seeks injunctive relief. Count Two seeks an accounting and an award of money pursuant to the Agreement between Fargnoli and plaintiffs. Count Three alleges common law conversion, misappropriation of trade secrets, tortious interference, and unfair competition. Count Four alleges violation of Ohio's Uniform Trade Secrets Act, O.R.C. §§ 1333.61-1333.69. Plaintiffs move for a preliminary injunction to prevent Lafarge from employing Fargnoli in any capacity whatsoever and to prevent any and all use of plaintiffs' business and technical trade secrets. Defendants oppose the motion.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctions. "When considering a motion for a preliminary injunction, the district court should consider four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Rock and Roll Hall of Fame and Museum, Inc. v. Gentile*

*Productions*, 134 F.3d 749, 753 (6th Cir. 1998); *see also Memphis Planned Parenthood, Inc. v. Sundquist*, 175 F.3d 456, 460 (6th Cir. 1999).

These four considerations are factors to be balanced, not prerequisites that must be met. *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998). Not all of the factors need be fully established for a temporary restraining order or injunction to be proper. *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997). However, a district court must make specific findings concerning each of these factors, unless fewer factors are dispositive of the issue. *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997). And, while none of the factors are given controlling weight, a preliminary injunction shall not issue where there is no likelihood of success on the merits. *Michigan State AFL-CIO*, 103 F.3d at 1249.

**DISCUSSION**

Fargnoli was employed by Old QPR in the 1990's. In May 2001, he became an employee of plaintiffs. In February 2007, Fargnoli resigned his employment with plaintiffs and went to work for the QPR division of Lafarge. Plaintiffs assert that in January 2007, while he was still employed by them, Fargnoli began contacting plaintiffs' customers for the purposes of diverting them to Lafarge. Plaintiffs further assert that Fargnoli spoke with defendants Folsom and Nathan on multiple occasions between January 11, 2007 and February 1, 2007 for the purpose of competing with plaintiffs.[2] Plaintiffs also allege that Fargnoli is acting in a sales capacity for Lafarge not as a quality control manager. Finally, plaintiffs contend that Fargnoli

---

[2]
    Defendant Folsom is employed by Lafarge in a sales capacity in the QPR division. Defendant Nathan is employed by Lafarge as the General Manager of the QPR division.

5

has misappropriated plaintiffs' technical trade secrets for defendants' use.

In support of its arguments, plaintiffs submit the declaration of Michael Pemberton, President of Unique Paving Materials Corp. This declaration alleges, among other things, that Fargnoli made contact with the City of Cleveland and diverted the business of the Pennsylvania Department of Transportation ("Penn DOT"), Eastern Industries and Albany Asphalt.

Defendants counter that Fargnoli is not engaged in any sales activity for Lafarge. Defendants also state that Fargnoli does not possess any technical trade secrets of plaintiffs. In his current work as quality control manager for the QPR division of Lafarge, Fargnoli draws on his knowledge of Lafarge's processes and formulations acquired when he was employed by Old QPR (before he was employed by plaintiffs). In support of their arguments, defendants offer the declarations of Fargnoli and Nathan.

Fargnoli declares that at no time during his employment with plaintiffs was he provided with any information regarding the chemical processes or formulations used by plaintiffs. He states that he contacted Folsom and Nathan at Lafarge in January 2007 seeking employment. Fargnoli further states that he had no role in preparing Lafarge's bid to the City of Cleveland and that he did not provide any information to any Lafarge representatives in connection with this bid. Fargnoli also explains that he has not engaged in any sales activity on behalf of Lafarge with Penn DOT. He has met with technical employees of Penn DOT regarding the quality control specifications of Lafarge's product. Fargnoli also met with his contacts at Albany Asphalt and Eastern Industries to inform them he had left the employ of plaintiffs. Fargnoli admits to telling these contacts that a sales representative from Lafarge would contact them but he denies soliciting these customers to purchase material from Lafarge.

Nathan's declaration also states that his conversations with Fargnoli in January 2007 related only to Fargnoli's possible employment with Lafarge. Nathan reiterates that Fargnoli has no sales duties or responsibilities with Lafarge nor has he engaged in any sales solicitation since joining Lafarge. More specifically, Nathan states that Fargnoli was not involved in the bid to the City of Cleveland. Nathan states that all bids were rejected by the city and that, on information and belief, plaintiffs failed to submit a timely bid for this contract. Nathan also explains that Lafarge has not done any business with Penn DOT or Eastern Industries since Fargnoli joined Lafarge. Lafarge has sold material to Albany Asphalt during this time. This business was solicited by Lafarge sales representative Zack Levitt.

Nathan's declaration is also accompanied by an exhibit - an email from Nathan to Michael Pemberton. In this email, Nathan assures Pemberton that Fargnoli has been hired to work exclusively in quality control, not sales. Nathan states that Fargnoli's expertise gained when he was employed by Old QPR was the reason he was hired, not any potential knowledge he might have gained of plaintiffs' technical trade secrets. Nathan also explains that, while Lafarge does intend to expand its customer base, these efforts will include solicitations of businesses that were once customers of Lafarge. Some of these customers left Lafarge and followed Fargnoli to Unique in 2001. The list of prospective customer targets was generated from Lafarge's year 2000 customer list and not from any list of Fargnoli's customers he called on while at Unique.

To prevail on its motion for a preliminary injunction, plaintiffs must demonstrate a likelihood of success on the merits. *Michigan State AFL-CIO*, 103 F.3d at 1249. To do so, plaintiffs must make a showing of clear and convincing evidence on each element of its claims.

*Jacono v. Invacare Corp.*, 2006 Ohio 1596 (Ohio App. 2006). The Court finds that plaintiffs have failed to establish the need for a preliminary injunction. Plaintiffs make no attempt to establish a likelihood of success on the merits, much less the other three factors the Court must consider. In fact, plaintiffs acknowledge neither the standard to be met on a motion for a preliminary injunction nor the elements of their asserted claims. Instead, plaintiffs merely assert in conclusory fashion that they have been and will continue to be irreparably harmed by Lafarge's employment of Fargnoli. Plaintiffs present no evidence that supports their argument that Fargnoli has disclosed business trade secrets to Lafarge or its employees. And, plaintiffs present no evidence that Fargnoli possesses or has disclosed any technical trade secrets. Accordingly, plaintiffs have not demonstrated a likelihood of success on the merits. As a result, the Court declines to issue a preliminary injunction.[3]

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for preliminary injunction is DENIED.

IT IS SO ORDERED.

                                          /s/ Patricia A. Gaughan
                                          PATRICIA A. GAUGHAN
                                          United States District Judge

Dated: 10/2/07

---

[3] Having resolved the motion on this ground, the Court need not consider the other three factors. *Six Clinics Holding Corp.*, 119 F.3d at 399.